## TROPIC–AIRE, Inc., v. WILDERMUTH.
### No. 337.

Circuit Court of Appeals, Second Circuit.
April 10, 1933.

Drury W. Cooper, C. Blake Townsend, and Thomas J. Byrne, all of New York City, for appellant.

Pennie, Davis, Marvin & Edmonds, of New York City (A. C. Paul, of Minneapolis, Minn., and Geo. I. Haight, M. K. Hobbs, and Ward Ross, all of Chicago, Ill., of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The title of the plaintiff to the patent in suit is unquestioned. Claims 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, and 13 are all relied upon. The original patent to Caesar was applied for February 7, 1927, was issued May 1, 1928, and given the number 1,668,490. The application for reissue was filed August 23, 1928, and was granted November 13, 1928. The first six claims of the patent in suit were in the original; the remainder are new.

The patent relates to what are claimed to be new and useful improvements in apparatus for heating the interior of automotive

vehicles. The defenses consist of noninvention, noninfringement, and invalidity because of a failure to disclaim after the decree became final in the case of Tropic-Aire, Inc., v. Sears, Roebuck & Co. (C. C. A.) 44 F.(2d) 580. As the result of this appeal follows from the conclusion we have reached as to lack of invention, the other defenses need not be noticed.

Stated in simple language, what Caesar did was to place a small hot water radiator within the body of an automobile, preferably just behind the dash, and put a small electric fan close to and back of it within what may be called the radiator housing. He wired the fan to the battery in the car to obtain the electrical energy for its operation. In this circuit, he put a small rheostat and a switch which permitted the fan to be started, stopped, and operated at variable speeds. Besides this, he tapped the hot water current flowing from the water jacket of the automobile engine to its radiator and piped that current back to his small radiator in the body of the car to obtain the hot water which supplied the heat to his device. The hot water thus obtained circulated through his radiator and on in a return pipe from his radiator back to the cooling system of the automobile engine. In addition, he put a valve in the feed pipe to his small radiator to permit the hot water supply to it to be reduced in volume or cut off entirely as desired. The result was a small, efficient, and practical hot water heating unit within the body of an automobile which utilized the heat in the cooling system of the engine and withdrew it rapidly from the small radiator by means of the fan. Money was spent freely in advertising; a suit for a preliminary injunction before the patent was adjudicated resulted in a decree for the plaintiff, Tropic-Aire, Inc., v. Jumper et al. (D. C.) 28 F.(2d) 631, and the patented heater was sold and used extensively. Subsequently, the bill in a suit involving only claims 6 and 7 of this patent was dismissed for want of equity by the same District Judge who granted the preliminary injunction above referred to, Tropic-Aire, Inc., v. Sears, Roebuck & Co. (D. C.) 44 F.(2d) 577, and that decree was affirmed in an opinion by Judge Kenyon in the Circuit Court of Appeals for the Eighth Circuit in which he analyzed the subject-matter of this patent in detail.

When Caesar entered the field, the heating of the interior of an automobile by using heat from the engine was old. Not only were there many hot air heaters, which need not be discussed, but hot water heaters had long since been known. On January 12, 1915, patent No. 1,124,403 was issued to Chas. R. Faruolo of New York, for an automobile heater which took hot water from the tube leading from the engine water jacket to the radiator and conveyed it back in a pipe to a small hot water radiator placed in the floor of the body of the car. A return pipe from this small radiator led to the bottom of the engine's radiator to provide for the circulation of the water in connection with the cooling system. It is only fair to say that this patent did not disclose the use of an electric fan to blow air through the small radiator. On December 26, 1922, patent No. 1,439,857 was issued to Anderson. A hot water heater located in the floor of the body of an automobile, provided with a supply of hot water from the cooling system, was fully disclosed. Anderson did more than Faruolo, or Caesar, for that matter, in controlling the hot water supply for his heater, in that he provided connections so designed that water for his heater could be circulated through it and the water jacket of the engine without going through the engine radiator until the water there was heated to the temperature at which a thermostat in the water line had been set. This permitted the heater to begin warming the interior of the car sooner than would have been possible had it been necessary to wait for all the water in the cooling system to reach the temperature necessary for that use. Anderson, however, had no fan. On September 29, 1925, patent No. 1,555,201 was issued to Gulyban for a heating and cooling system for automobiles. He showed a heater coil just back of the dash in the preferred location of Caesar and connections to draw the hot water supply from the cooling system of the engine together with an automatic control as well as a system of forced circulation in which a pump was placed in the water line. He had no fan. On March 9, 1926, patent No. 1,575,667 was issued to Waters for a heater for motorcars. He put a fitting in the intake pipe of the car radiator so constructed that it would divert a part of the hot water coming from the engine water jacket to a pipe connected with a small hot water radiator placed "at any convenient location along the floor of the car"; thence back from the small radiator through a return pipe to another tap in the same fitting to carry it into the car radiator.

On April 20, 1926, patent No. 1,581,761 was issued to Muir for a heater for automobiles. Muir, having a small radiator supplied with hot water from the cooling system of the engine, also caught with the flared

344

opening of a pipe, and, before it had been contaminated by fumes from the engine, some of the air which had passed through the engine's radiator and carried it back in the pipe through the small radiator into the car. While Muir had no small fan, he did get an air current by placing the flared opening of his leader pipe where the air would be blown into it by the fan at the rear of the engine radiator. Nor was this feature entirely new, as is shown by the British patent No. 9026 to Daimler in 1900.

Moreover, the use of a fan as a unit with a radiator to withdraw the heat faster by air circulation was old. As early as 1869, B. F. Sturtevant obtained patent No. 92,490, which showed that much though of course not in connection with an automobile heater. What Sturtevant, and some others who need not be named, did, is only mentioned to lead up to the Modine patent, No. 1,666,907, issued April 24, 1928, for a heating unit which so completely disclosed a small radiator integral with the housing through which air was forced by a fan that it is quite impossible to find more in Caesar's radiator as such, than a small Modine heating unit.

The claims relied upon may be illustrated by 3 and 13 which are quoted:

"3. A hot-liquid heating system for motor-driven vehicles comprising an engine circulating liquid-cooling system including an engine cooling-medium jacket and radiator, a valve positioned between the engine cooling-medium jacket and radiator for controlling the flow of the cooling-medium from the jacket to the radiator and its return, a liquid-heated air-heater positioned within the body of the vehicle and in communication with the engine circulating-liquid cooling system, means disposed between the liquid-heated air-heater and an engine-containing chamber to prevent passage of noxious gases and fumes from the engine-containing chamber into the space containing the liquid-heated air-heater, an electric motor-driven fan to circulate heated air within the vehicle body, and means for regulating the speed of the motor to control the circulation of air within the body of the vehicle."

"13. A hot liquid heating system for motor driven vehicles comprising an engine circulating liquid cooling system including an engine cooling medium jacket and radiator and means for producing a flow of the cooling medium from the jacket to the radiator and its return, a liquid heated air heater positioned within the body of the vehicle and in communication with the engine circulating

liquid cooling system, means disposed between the liquid heated air heater and an engine containing chamber to prevent passage of noxious gases and fumes from the engine-containing chamber into the space containing the liquid-heated air-heater and a fan within the space containing the liquid-heated air-heater for circulating air in contact with said air heater and within the vehicle body."

That this heater was a good one may be taken for granted, but what more was needed to put it into an automobile ready for use in the approved manner of Caesar than a good mechanic to cut the pipes connecting a Faruolo radiator, or an Anderson radiator, or a Gulyban radiator at the dash, and attach them to a Modine unit placed just behind the dash, cannot be discovered. No part performs a new function in Caesar in connection with any other part. A well-advertised aggregation of devices taken from the prior art has had conspicuous commercial success, but that falls short of proof of invention needed to sustain a patent, however persuasive it may be on the question of utility. McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800. In our opinion, all the claims in suit are invalid on the grounds set forth at length in Tropic-Aire v. Sears, Roebuck & Co., supra.

Decree reversed.